IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DAVID R.H.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 1:24-cv-01446-JEH |

**Amended Order**

This case is now before the Court for a determination on the merits based on the Plaintiff's Complaint and Opening Brief (D. 1, 7)[1], and the Brief In Support of the Commissioner's Decision (D. 10). Pursuant to 42 U.S.C. § 405(g), based on the relief requested therein, Plaintiff's Opening Brief and the Commissioner's Brief are deemed cross motions for summary judgment. This matter is fully briefed, and for the reasons stated herein, the Court grants the Plaintiff's Motion. Specifically, the Court hereby reverses the Commissioner's decision and hereby remands this matter for further administrative proceedings, including a *de novo* hearing and decision.[2]

I

David R.H. filed an application for Title II Disability Insurance Benefits (DIB) on February 21, 2022, alleging that he had a disability that began on February

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (D. 5) on the docket.

1

28, 2021. AR 21. He claims that his disability was due to right rotator cuff tear repair surgery, left rotator cuff tear, hearing loss, post-traumatic stress disorder (PTSD), anxiety disorder, clinical depression, sleep apnea, restless leg syndrome, high blood pressure, and high cholesterol. AR 33. His application was initially denied on February 24, 2023, and was then denied upon reconsideration on September 8th, 2023. AR 79-83, 89-92. Plaintiff filed a request for hearing on September 21, 2023, and a hearing was held before Administrative Law Judge (ALJ) Honorable John M. Wood on February 13, 2024, at which Plaintiff testified with counsel present. AR 36–56. On March 19, 2024, the ALJ issued a decision unfavorable to Plaintiff, AR 21-31, which was later adopted as the Commissioner's final decision when the Appeals Council denied review on September 17, 2024. AR 5-7. Plaintiff then filed this action under 42 U.S.C. § 405(g).

## II

David challenges the ALJ's Decision for the following reasons: 1) The Residual Functional Capacity (RFC) determination is defective because the reaching limitations which were determined by the ALJ directly conflict with the lift and/or carry requirements of light work; and 2) The ALJ's Step Two analysis is not supported by substantial evidence because the ALJ improperly determined that Plaintiff's post-traumatic stress disorder was non-severe.

## III

The Court reviews the Commissioner's denial of benefits under 42 U.S.C. § 405(g). The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

However, although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). The Court may not reweigh evidence, resolve conflicts, or substitute its judgment for that of the ALJ. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). In order to be sustained on appeal the ALJ must build an "accurate and logical bridge" between the evidence and his conclusions. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *McGarvey v. Kijakazi*, No. 21 C 6664, 2023 WL 374297, at *1 (N.D. Ill. Jan. 24, 2023). The ALJ must adequately address relevant impairments and limitations in the RFC and at Step Two of the sequential evaluation, where the ALJ must determine whether each impairment is "severe" and imposes more than a minimal effect on the claimant's ability to work. The Court overturns an ALJ's determination if the ALJ made legal error or if the decision is not supported by substantial evidence.

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566.

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or a combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not

less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;
2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;
3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The claimant bears the burden of proof in the first four steps. However, at Step Five, the burden shifts to the Commissioner to show the claimant retains the RFC to perform work that exists in significant numbers in the national economy. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (citing *Briscoe*, 425 F.3d at 352, and *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009)).

## IV

David served his country for over thirty years in the United States Army, including multiple combat deployments to Iraq and Afghanistan. The record is

replete with references to the physical and psychological toll of that service. David sustained significant orthopedic injuries, including bilateral shoulder damage culminating in a right rotator cuff repair and progressive osteoarthritis in his left shoulder, right knee, and left ankle. He also developed a collapsed arch in his left foot, which causes severe pain after even short periods of standing or walking. In addition to his physical impairments, Plaintiff has lived for years with PTSD and associated difficulties stemming from his combat experiences.

Plaintiff's shoulder injuries trace back to a 2018 workplace accident while he was still in service, when a 600-pound roll of canvas fell on him, and he attempted to stop it with his arms. AR 43, 178. The right shoulder required surgical repair, including an open distal clavicle excision, rotator cuff debridement, and acromioplasty. AR 178. The left shoulder progressively worsened, with chronic pain radiating through the lateral arm, weakness in external rotation, and positive impingement and Hawkins signs on examination. AR 178-79.

By March 2022, Plaintiff's treating physician documented visible pain even when Plaintiff removed his shirt for examination, limited forward elevation and lateral abduction, and a recommendation for orthopedic surgical evaluation. *Id*. The November 2022 internal medicine consultative exam corroborated these findings: both shoulders were tender anteriorly, range of motion was restricted bilaterally, and pain radiated into the second through fourth fingers, causing numbness and frequent dropping of objects. AR 231. Plaintiff described the pain as "aching, throbbing, and sharp," rating it 8/10 in intensity. *Id*. His gait was antalgic, he struggled with heel, toe, and tandem walking, and had difficulty when squatting and rising. AR 233. Plaintiff's left foot collapsed arch causes a constant pain sensation. AR 45. Imaging also confirmed osteoarthritis in the right knee with joint space narrowing and osteophyte formation, and an old deformity in the left

distal fibula. AR 448. These conditions, compounded, significantly limited his ability to stand, walk, or maintain postures for prolonged periods, an issue central to whether he can sustain any full-time work.

While Plaintiff's physical injuries are well-documented, the record shows that perhaps the most profound and disabling effect of his decades of military service is his PTSD. Plaintiff testified to surviving multiple combat incidents, including being in a vehicle that was "blown up" by an improvised explosive device (IED) and witnessing violent losses of fellow soldiers. AR 227. He reported to the consultative examiner that he is constantly on guard for the safety of himself and his family and is easily startled by loud or unexpected sounds. AR 228. Nightmares and restless awakenings occur nightly, leaving him sleep-deprived. *Id*.

David's wife assists him daily due to his inability to manage both pain and psychological symptoms. *Id*. Plaintiff reported irritability, frequent anger, and described himself as "easy to fight with." *Id*. He testified that he does not "function good in public at all" and avoids people as much as possible, leaving the house only three to four times per month. AR 45-47. He stated that his trips outside the home are limited to accompanying his wife on shopping trips and attending church twice a month. AR 49. "He skipped family gatherings, including Thanksgiving, because groups and noise "rattle [his] head." *Id*.

Dr. Jonathan Thomas Stagg, Ph.D., who conducted the November 2022 consultative psychological exam, concluded that Plaintiff's symptoms were "consistent with PTSD and depression." AR 229. While his speech and affect were appropriate on exam, he exhibited nervousness, had difficulty with delayed recall,

and endorsed the full range of hyperarousal and avoidance symptoms associated with chronic combat-related PTSD. AR 228.

Despite these consistent reports relating to the severity of the impact of PTSD on David's ability to function in society, the ALJ found David's PTSD to be "non-severe," citing "mild" paragraph B limitations (which measure the degree of limitation in the areas of understanding and memory, social interaction, concentration and persistence, and adaptation). The ALJ omitted any mental or social restrictions in the RFC. AR 24-27.

At the hearing on February 13, 2024, Plaintiff's testimony painted a vivid picture of the daily challenges posed by his conditions. Regarding David's physical limitations, he described needing two hands to lift a gallon of milk due to shoulder pain. AR 43. Extending his arms straight out causes pain at level five; overhead reaching brings pain at level seven. AR 48. Plaintiff testified that his shoulder pain prevents him from lifting anything above five pounds or overhead. *Id*. He testified that seated tasks with his arm out, even resting on a desk, cause pain flare-ups due to the strain on his shoulders, making even sedentary work unsustainable. AR 44-45. He detailed the pain cycle caused by his left foot arch collapse: "after about 20 minutes it feels like a sharp rock in [my] shoe". Tr. 41.

He cannot prepare meals, do yardwork, or housework. His wife and son handle tasks. AR 47, 245. If no one else can mow, he stated that he can use a riding lawn mower for up to 20 minutes, but he cannot use a weed eater or push mower due to pain in his shoulders. AR 59. He can stand/walk only for about 20 minutes due to collapsed arch pain. AR 45. His PTSD results in avoidance of crowds and social settings, poor functioning in public, nightmares, anger issues, difficulty

7

concentrating, and hypervigilance. He leaves home only a few times monthly and, besides that, does not socialize with others. AR 49.

### A

An RFC must reflect a claimant's ability to perform work on a "regular and continuing basis," defined as 8 hours a day, 5 days a week, or an equivalent full-time schedule. SSR 96-8p; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Here, the ALJ concluded that Plaintiff retained the capacity for a range of light work with occasional reaching bilaterally, but he failed to address whether Plaintiff could sustain such work for a full workday and workweek given his pain, postural limitations, and reduced endurance. AR 26-27. These limitations are directly relevant to whether Plaintiff can perform light work for eight hours a day on a consistent basis. *See* SSR 96-8p; *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (noting that SSR 96-8p requires the ALJ to evaluate whether the claimant can sustain work activities on a regular and continuing basis).

The consultative examination by Dr. Taiwo supports these complaints. He observed an antalgic gait, difficulty heel and toe walking, and reduced range of motion in both shoulders with pain during even modest movements. AR 233-36. Dr. Taiwo noted that Plaintiff's pain was aggravated by movement and radiated into his fingers, causing numbness and dropping objects. AR 231.

The evidence of David's physical conditions as they relate to work-related disability is extensive and compelling. David sustained a right shoulder rotator cuff tear in 2018 (when a 600-lb canvas roll fell on him), followed by surgery and debridement of the right shoulder. AR 43, 178. After surgery, he continued to experience right shoulder pain and numbness in his fingers. AR 43. Beginning in 2018, he also reported escalating left shoulder pain, worsening annually. AR 177.

On March 14, 2022, Dr. Orlevitch examined David and made the following findings: left shoulder forward elevation and lateral abduction were painful (limited to 170°/160°, versus nearly full range on right); external rotation and elevation showed weakness (4/5); impingement and Hawkins signs were positive on the left; and there was stiffness behind the back, along with mild AC joint arthritis. AR 177-79. Dr. Orlevitch recommended activity modifications and follow-up after an MRI. *Id*.

On January 7, 2023, imaging showed mild osteoarthritis in the right knee (marginal osteophytes, sclerosis) and a fibular deformity in the left ankle with lucency in the calcaneum. AR 448-49. A consultative internal medicine exam by Dr. Taiwo on November 19, 2022, confirmed persistent bilateral shoulder pain rated 8/10, aggravation with movement, radiation into the second through fourth fingers with numbness and dropping of objects. AR 231. A physical exam showed tenderness, limited active range of motion, collapsed left foot arch, antalgic gait, difficulty walking on toes/heels/tandem, and squatting issues, though strength and sensation were intact. AR 232-37. Dr. Taiwo's impression included bilateral rotator cuff injury, right knee/left ankle degenerative joint disease, collapsed left foot arch, restless leg syndrome, hearing loss, and obstructive sleep apnea. *Id*. State-agency medical consultants Dr. Western (January 2023) and Dr. LaFata (September 2023) assessed that Plaintiff could perform light work with occasional overhead and other reaching, occasional climbing ramps, frequent balancing, and lifting of 20 pounds occasionally and 10 pounds frequently, with six hours of standing/walking and sitting in an eight-hour day. AR 58-59, 66-67.

The ALJ's findings regarding the types of work David could perform are inconsistent with the sustained lifting, carrying, standing, and reaching required in light work over a full day. Yet, as Plaintiff argues, the ALJ never made findings

on Plaintiff's endurance or ability to stay on-task throughout a full workday. Doc. 7. at ECF p.11. The Commissioner argues that the ALJ reasonably accounted for Plaintiff's limitations. Doc. 10 at ECF p.7. However, the ALJ's failure to address the core issue of whether Plaintiff could sustain work for a full workday and workweek fails to satisfy SSR 96-8p or the requirement under Seventh Circuit law to build an "accurate and logical bridge" from the evidence to the RFC conclusion. *McGarvey*, 2023 WL 374297, at *1; *Green*, 204 F.3d at 781.

Plaintiff also argues that the RFC's limitation to occasional reaching in all directions bilaterally cannot be reconciled with the lifting and carrying demands of light work. Doc. 7 at ECF p.12. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); SSR 83-10. The ALJ recognized that Plaintiff was limited to occasional reaching in all planes, including forward and lateral, yet simultaneously concluded he could meet the frequent lifting and carrying demands of light work. AR 26. As other courts have recognized, there is an inherent conflict between limiting a claimant to occasional reaching in all directions and finding they can meet the frequent lifting and carrying requirements of light work, because lifting and carrying typically require reaching to grasp and move objects. *Kimberly W. v. Kijakazi*, No. 20-cv-50055, 2022 WL 220305, at *8 (N.D. Ill. Jan. 25, 2022); *Tanya S. v. Kijakazi*, No. 2:21cv38, 2021 WL 6201733, at *6 (N.D. Ind. Dec. 31, 2021). The Commissioner does not directly address this conflict between the reaching limitation and the regulatory definition of light work. Instead, the Commissioner emphasizes the VE's testimony to support the RFC finding. Doc. 10 at ECF p.11-13. The VE's testimony pointed to very few light jobs, allowing only occasional reaching, but, again, other courts

have concluded that such limitations can effectively preclude all light work. *Kimberly W.*, 2022 WL 220305, at *8; *Tanya S.*, 2021 WL 6201733, at *6.

The VE testified that there are very few unskilled light jobs that allow only occasional reaching. However, three unskilled light jobs do exist with different reaching planes. The unskilled light jobs the VE identified, furniture rental consultant (40,000 jobs), usher (25,000 jobs), and counter clerk (90,000 jobs), each require frequent public contact and only occasional reaching in all directions. AR 51-54. The VE testified that these jobs required lifting/reaching requirements commensurate with light work, and that Plaintiff's restrictions would preclude past relevant work. *Id.*

The issue here is not the credibility of the VE, but rather the internal consistency of the ALJ's decision. The ALJ found Plaintiff capable of frequent 10-lb lifting but only occasional all-direction reaching. However, frequent lifting implies reaching more than one-third of the workday, which conflicts with "occasional" reaching (defined as up to one-third of the time). 20 C.F.R. § 404.1567(b); SSR 83-10). The ALJ failed to reconcile how Plaintiff could frequently carry/lift while limited to occasional reaching, thus failing to build the requisite logical bridge. *McGarvey*, 2023 WL 374297, at *1; *Green*, 204 F.3d at 781. Without explaining how Plaintiff could frequently lift and carry objects while limited to only occasional reaching, the ALJ failed to construct the "logical bridge" required by Seventh Circuit precedent so as to preclude meaningful appellate review. *McGarvey*, 2023 WL 374297, at *3; *Green*, 204 F.3d at 781; *Weatherbee*, 649 F.3d at 569. The ALJ's failure in this regard is outcome-determinative, and remand is therefore required.

Because the RFC itself is internally inconsistent and under-inclusive of mental limitations (as set forth below), the VE's testimony, based on a flawed RFC,

11

cannot provide a valid foundation for affirming the denial of benefits. While it is true that Plaintiff's counsel did not object before the agency, this Court must ensure the hypothetical reflected all supported limitations. Upon careful review of the record, it is clear to this Court that the RFC was materially flawed. Reliance on unopposed VE testimony is permissible only if the RFC and hypothetical are themselves reasonable and supported. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Yurt v. Colvin*, 758 F.3d 850, 857–58 (7th Cir. 2014). In this case, the RFC is not reasonable and supported but instead is internally inconsistent and at odds with the evidence in the record.

B

The Court is also persuaded by Plaintiff's argument that the ALJ erred at Step Two by finding Plaintiff's post-traumatic stress disorder non-severe and then failing to account for any mental limitations in the RFC. Doc. 7 at ECF p.16. Plaintiff's unrebutted testimony regarding the severity of his PTSD was compelling. David explained that he avoids the public almost entirely, rarely leaves the house, and can only manage short, controlled trips with his wife. AR 49. He testified that his PTSD manifests as hypervigilance, irritability, and social withdrawal, stating plainly: "I really don't function good in public at all." AR 45. These statements were corroborated by his medical records and Dr. Thomas-Stagg's evaluation. AR 227-29.

The record reflects that Plaintiff's PTSD stems directly from combat trauma during multiple deployments, including surviving an IED attack and witnessing violent combat deaths. This is chronic, military-related PTSD with pervasive functional impact. Plaintiff consistently reported withdrawal from others,

12

irritability, hypervigilance, nightmares, and avoidance of public settings due to PTSD. AR 46-49, 227-28. At the hearing, David testified that he leaves the house only three to four times per month and avoids groups because they "rattle [his] head." AR 49. The consultative examiner, Dr. Thomas-Stagg, concluded that Plaintiff's psychiatric symptoms were consistent with PTSD and depression and observed nervousness and difficulty with delayed recall. AR 227-29.

In March and June 2020, Plaintiff was treated for obstructive sleep apnea, daytime hypersomnolence, nightmares, and a history of concussions. AR 334-38. In April 2021, Plaintiff reported chronic sleep disturbance, agitation, anxiety, PTSD with anger, and ineffective therapy. AR 350, 354. In February and March 2022, he continued to experience anger, concentration/focus issues, chronic sleep disruption (waking every 20–30 minutes on CPAP), urinary frequency, and anxiety. AR 359, 363.

Consultative psychological examination in person by Dr. Thomas-Stagg on November 10, 2022, substantiates David's claims regarding the impact of his PTSD and depression. Dr. Thomas-Stagg's mental status examination noted David's withdrawal, irritability, restless sleep, nightmares, inability to concentrate, startling easily (hypervigilance), and constant guardedness, and Dr. Thomas-Stagg concluded those reported psychiatric symptoms were consistent with PTSD and depression. AR 424-26.

State-agency psychologists Dr. Hudspeth (December 2022) and Dr. DiFonso (September 2023) both concluded PTSD caused at most mild limitations in the four "paragraph B" domains and was a non-severe mental impairment. AR 56-57, 64-65.

The ALJ did not explain what weight, if any, he gave to Dr. Thomas-Stagg's consultative psychological opinion despite its basis in a personal examination and consistency with Plaintiff's testimony. Under 20 C.F.R. § 404.1520c, the ALJ is required to articulate how he considered the supportability and consistency of each medical opinion. The decision contains no discussion of how Dr. Thomas-Stagg's findings were weighed against the state-agency reviewers. This failure to evaluate the opinion's supportability (objective findings) and consistency (alignment with Plaintiff's testimony and other evidence) leaves the RFC unsupported by substantial evidence. Despite the evidence presented by David, the ALJ dismissed PTSD as non-severe and causing no more than "mild" limitations in the paragraph B criteria and included no mental restrictions in the RFC. AR 24–27. This cursory treatment fails to engage with significant probative evidence and is not supported by substantial evidence. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (reversing where ALJ "cherry-picked" mental health evidence and failed to account for supported limitations despite mild paragraph B findings).

The Commissioner argues (apparently asserting waiver or harmless error) that Plaintiff did not identify specific mental limitations the ALJ should have included. Doc. 10 at ECF p.7. However, the record itself suggests restrictions on public interaction, safety, and work pace that were not substantively addressed by the ALJ. Additionally, the VE testified that all three identified jobs, specifically furniture rental consultant, usher, and counter clerk, require frequent public contact (AR 53), directly conflicting with Plaintiff's testimony of social avoidance and hypervigilance, as well as his tendency to become angry. The ALJ's failure to include any mental or social restrictions in the RFC renders the Decision

14

unsupported. *See Yurt*, 758 F.3d at 859–60; *Varga v. Colvin*, 794 F.3d 809, 813–14 (7th Cir. 2015).

There is substantial unrebutted evidence in the record that David's PTSD has had major impact on his ability to function in a workplace and was severe. This evidence includes extensive documentation of avoidance, hypervigilance, and social withdrawal. Perhaps as importantly, David testified to anger and irritability issues. This evidence is contained in both testimony and the consultative evaluation. Mental impairments such as PTSD often "wax and wane," and ALJs may not discount consistent symptoms simply because of occasional periods of improvement. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). It is the Court's opinion that the ALJ's findings that David's PTSD is "non-severe" and causes only "mild" limitations is not supported by the record. Those findings stand in stark contrast to Plaintiff's lived reality, which established the severe impact of David's PTSD on his ability to work and function in society. The severity of David's PTSD is supported by both the objective and subjective evidence in the record.

The ALJ concluded PTSD was non-severe, without meaningful discussion of Plaintiff's chronic anger, social withdrawal, nightmares, and concentration issues. He then excluded any mental limitations from the RFC. The Seventh Circuit has repeatedly held that even a "de minimis" step-two error is not harmless when mental limitations are omitted entirely and the claimant's testimony and medical evidence document persistent mental symptoms. *See Larson v. Astrue*, 615 F.3d 744, 748 (7th Cir. 2010); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010); *see also Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987). The ALJ's limited references to PTSD (AR 24-25, 26-28) ignored the weight of medical and testimonial evidence

documented in the record. The omission prejudiced Plaintiff by ignoring vocational barriers related to social interaction and pace.

The vocational expert (VE) testified that all three jobs identified (furniture rental consultant, usher, and counter clerk) require frequent public contact. AR 52-53. As noted previously, the VE testified that competitive employers expect employees to be on-task 85–90% of the day, excluding standard breaks, and that more than one absence per month would preclude employment. AR 54. These requirements raise direct conflicts with Plaintiff's testimony of endurance limits and social avoidance. Without an explicit finding regarding whether Plaintiff can meet those expectations in light of his documented pain and endurance limits, as well as his PTSD symptoms, the RFC lacks substantial evidence. *See Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017) (reversing where ALJ failed to address whether claimant could sustain full-time work given symptoms and treatment record).

Contrary to the Commissioner's position, the omission of substantive analysis regarding whether David could work for a full workday and full work week in light of the physical and mental conditions which had been recognized is not a harmless error. *Compare Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (explaining that an error is harmless where it can be "predict[ed] with great confidence" that the ALJ would reach the same result on remand). The omission of substantive analysis at Steps Two and Four precludes the Court from confidently predicting the ALJ would reach the same result on remand had he not committed such an omission.

V

Because the ALJ's RFC assessment lacks a logical bridge between the lifting and reaching limitations, because the ALJ improperly minimized Plaintiff's PTSD and omitted mental limitations without adequate analysis, and because the ALJ failed to properly consider whether Plaintiff can sustain work on a "regular and continuing basis" as required by SSR 96-8p, the decision is not supported by substantial evidence. The Court grants Plaintiff's Motion to vacate the ALJ's Decision. The Commissioner's decision denying Plaintiff's application for disability insurance benefits is REVERSED and this matter is REMANDED for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four.

*It is so ordered.*

Entered on September 16, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE